# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

May 15, 2012

No. 11-70032

Lyle W. Cayce
Clerk

DONNIE LEE ROBERTS,

Petitioner–Appellant

v.

RICK THALER, DIRECTOR, TEXAS DEPARTMENT OF CRIMINAL
JUSTICE, CORRECTIONAL INSTITUTIONS DIVISION,

Respondent–Appellee

Appeal from the United States District Court
for the Eastern District of Texas

Before KING, JOLLY, and GRAVES, Circuit Judges.

KING, Circuit Judge:

Donnie Lee Roberts was convicted of capital murder and sentenced to death. The Texas Court of Criminal Appeals rejected both his direct and postconviction appeals. He then filed for federal habeas relief in the district court. The district court rejected his petition for habeas relief, but granted him a certificate of appealability to pursue three claims arising from his sentencing hearing dealing with, respectively, the restrictions on his expert's testimony, the alleged ineffective assistance of his trial counsel in failing to object to victim impact testimony, and the restriction on execution impact testimony. Roberts's first claim is procedurally defaulted and, alternatively, fails on the merits. His

No. 11-70032

ineffective assistance claim also fails on the merits, and his execution impact claim is procedurally barred. We, therefore, AFFIRM the district court's denial of habeas relief to Roberts.

## I. FACTUAL AND PROCEDURAL BACKGROUND

The district court summarized the facts underlying Donnie Lee Roberts's ("Roberts") case as follows:

> At the time of the murder, [Roberts] lived with the victim, Vicki Bowen. [Roberts] was unemployed, often drank alcohol, and used cocaine. Bowen worked as a dental assistant. On October 15, 2003, she went shopping with co-worker Brenda Bland, but she did not show up for work the next day. Because Bowen was a punctual person who always called if she was going to be late, Bland became concerned and went to Bowen's house to check on her. When Bland arrived at the home, she found the front door open. After knocking and receiving no answer, Bland entered the home and found Bowen dead. Bland noticed that Bowen was still in the scrubs she had worn at work the previous day. She was covered by a blanket and was lying face down with her head turned to the side in a pool of blood. Blood spatters were present in the living room on the coffee table, the couch, and the walls. The medical examiner would later determine that Bowen died from two gunshot wounds to the head.
>
> It was immediately apparent from an examination of the scene that Bowen's television and her son's truck were missing. That same day, the police found [Roberts] after tracking down the stolen truck. It was later determined that [Roberts] had taken the truck, the television, Texans/Titans football tickets, jewelry, a Western Union money order, a .22 rifle, and a .22 pistol. [Roberts] had sold the football tickets for one hundred dollars. He had bought cocaine from Edwin Gary on October 15 on three different occasions, the last of which involved trading the .22 caliber pistol. [Roberts] had apparently abandoned the .22 rifle, later determined to be the murder weapon, a few blocks from where he was found. The Western Union money order was found in the residence at which [Roberts] had parked his truck, but the television and the jewelry were never recovered.
>
> [Roberts] was interviewed and gave a confession. In that confession, he acknowledged that he had "a crack cocaine problem"

2

No. 11-70032

and that he would go to bars, get drunk, and then look for drugs. With regard to the victim's death, [Roberts] said, "I pointed the gun at her and I told her just give me some money." Later in the interview, [Roberts] stated: "I pointed the gun at her and I said, 'if you'd just give me some money.' And she said 'No.' And then I said, 'Look, it doesn't have to be this way.' That's all I remember saying to her. And the next thing I know, I shot her."

At trial, [Roberts] testified to a different sequence of events. He claimed that he picked up the .22 rifle because it was out of place, near the door. He also claimed that he saw what looked like a .22 pistol in Bowen's pocket and that she moved her hand to her pocket to reach for it. He then said that he "must have chambered a round into the .22 rifle at that time," but he did not remember if he pulled the safety off. He also claimed that he did not remember his gun firing but that he knows it did. [Roberts] further testified that he did not intend to rob Bowen at the time he shot her, but he admitted to taking items of her property later.

*Roberts v. Thaler*, No. 1:09cv419, 2011 WL 5433982, at *1–2 (E.D. Tex. Nov. 7, 2011) (citing *Roberts v. State*, 220 S.W.3d 521, 524–25 (Tex. Crim. App. 2007)).

Roberts was found guilty of capital murder on October 15, 2004, and, following a subsequent sentencing hearing, was sentenced to death on October 27, 2004. *Id.* at *2. Roberts's conviction and sentence were both affirmed by the Texas Court of Criminal Appeals ("TCCA") on direct appeal. *See Roberts*, 220 S.W.3d at 524–25. His petition for state postconviction relief was denied, with the TCCA adopting most, but not all, of the lower court's findings and conclusions. *See Ex parte Roberts*, Nos. 71,573-01, 71,573-02, 2009 WL 1337443, at *1 (Tex. Crim. App. May 13, 2009).

Roberts then filed for federal habeas relief in the district court for the Eastern District of Texas, raising nineteen claims for relief. *See Roberts*, 2011 WL 5433982, at *2–3. The district court rejected all of Roberts's claims for habeas relief on a variety of procedural and substantive grounds on November 7, 2011. *Id.* at *26. On December 7, 2011, the district court granted Roberts a certificate of appealability ("COA") to continue to pursue three of his claims

before this court: (1) that his right to be free from cruel and unusual punishment was violated when the trial court refused to let his expert testify during Roberts's sentencing that Roberts's combined use of alcohol and cocaine caused him to commit the capital murder; (2) that he was denied the effective assistance of counsel when his trial counsel failed to object during the sentencing hearing to testimony that Roberts alleges was improper victim impact evidence from an extraneous crime; and (3) that his right to be free from cruel and unusual punishment was violated when the trial court refused to allow testimony from Roberts's family member as to how his execution would impact her. We first address the proper standard of review under the Anti-Terrorism and Effective Death Penalty Act ("AEDPA"), 28 U.S.C. § 2254, and then resolve each of Roberts's claims in turn.

## II. DISCUSSION

*A. Standard of Review*

The district court's grant of a COA to Roberts gives us jurisdiction to review his claims. *See* 28 U.S.C. § 2254(c)(1)(A); *Miller–El v. Cockrell*, 537 U.S. 322, 335–36 (2003). "In an appeal of the district court's denial of habeas relief, 'this court reviews the district court's findings of fact for clear error and its conclusions of law *de novo*, applying the same standard of review that the district court applied to the state court decision.'" *Austin v. Cain*, 660 F.3d 880, 884 (5th Cir. 2011) (quoting *Jones v. Cain*, 600 F.3d 527, 535 (5th Cir. 2010)).

Roberts's appeal is governed by AEDPA, 28 U.S.C. § 2254. Under § 2254(d)(1), if the state court denied the petitioner's claim on the merits, a federal court may grant habeas corpus relief only if the state court's adjudication of his claim "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States . . . ." To be clear, "a federal habeas court may not issue the writ simply because that court concludes in its

independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be *unreasonable*." *Williams v. Taylor*, 529 U.S. 362, 411 (2000) (emphasis added); *see also Harrington v. Richter*, 131 S. Ct. 770, 786 (2011) ("It bears repeating that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable."). "A state court's decision is contrary to clearly established federal law if it applies a rule that contradicts the governing law set forth in Supreme Court cases . . . or if the state court decide[s] a case differently than the United States Supreme Court previously decided a case on a set of nearly identical facts." *Jones*, 600 F.3d at 535 (citations and internal quotation marks omitted). Similarly, "[a] state court's decision involves an unreasonable application of clearly established federal law if the state court 'correctly identifies the governing legal rule but applies it unreasonably to the facts of a particular prisoner's case.'" *Fields v. Thaler*, 588 F.3d 270, 273 (5th Cir. 2009) (quoting *Williams*, 529 U.S. at 407–08).

AEDPA also governs our review of factual determinations. *See Chester v. Thaler*, 666 F.3d 340, 348 (5th Cir. 2011). Under § 2254(e)(1), the state court's factual findings are accorded a presumption of correctness and the petitioner may only rebut this presumption with clear and convincing evidence. *See Miller–El v. Dretke*, 545 U.S. 231, 240 (2005). Moreover, we may not grant habeas relief unless the state court determination "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2).

Finally, we may not review a habeas claim "if the last state court to consider that claim expressly relied on a state ground for denial of relief that is both *independent* of the merits of the federal claim and an *adequate* basis for the court's decision." *Finley v. Johnson*, 243 F.3d 215, 218 (5th Cir. 2001) (emphasis added). Thus, "[a]s a rule, a state prisoner's habeas claims may not be

entertained by a federal court when (1) a state court [has] declined to address [those] claims because the prisoner had failed to meet a state procedural requirement, and (2) the state judgment rests on independent and adequate state procedural grounds." *Maples v. Thomas*, 132 S. Ct. 912, 922 (2012) (citation and internal quotation marks). The twin requirements of independence and adequacy demand that the state court's dismissal must "'clearly and expressly' indicate that it rests on state grounds which bar relief, and the bar must be strictly or regularly followed by state courts, and applied to the majority of similar claims." *Finley*, 243 F.3d at 218 (quoting *Amos v. Scott*, 61 F.3d 333, 338–39 (5th Cir. 1995)). Put differently, "[t]o produce a federally cognizable default, the state procedural rule 'must have been 'firmly established and regularly followed' by the time as of which it is to be applied.'" *Busby v. Dretke*, 359 F.3d 708, 718 (5th Cir. 2004) (quoting *Ford v. Georgia*, 498 U.S. 411, 424 (1991)). A petitioner may not overcome a procedural default based on independent and adequate state grounds, unless the prisoner can establish cause for the default and actual prejudice as a result of the alleged violation of federal law, or that the failure to consider his claims would result in a fundamental miscarriage of justice because he is "actually innocent" of the offense underlying his conviction or "actually innocent" of the death penalty. *Williams v. Thaler*, 602 F.3d 291, 307 (5th Cir. 2010) (citing *Schlup v. Delo*, 513 U.S. 298, 326–27 (1995); *Sawyer v. Whitley*, 505 U.S. 333, 340 (1992)). While our normal procedure is to consider issues of procedural default first, we may nonetheless opt to examine the merits first, especially when procedural default turns on difficult questions of state law. *Busby*, 359 F.3d at 720.

*B. Roberts's First Claim: The Limitation on His Expert's Testimony*

Roberts's first claim is that his rights under the Eighth Amendment were violated when the trial court refused to allow his expert, Dr. Katherine McQueen ("Dr. McQueen"), to testify that it was Roberts's combined use of alcohol and

crack cocaine that caused him to commit the capital murder. The trial court held a pre-sentencing evidentiary hearing to determine what the scope of Dr. McQueen's testimony would be. *Roberts*, 220 S.W.3d at 527–28. Upon reviewing Dr. McQueen's qualifications, the basis for her testimony, and arguments from both sides, the trial court determined that Dr. McQueen could not give her "opinion about whether [Roberts's addiction to cocaine and alcohol] had some bearing on th[e] offense." *Id.* at 529. Dr. McQueen was permitted to testify that there was statistical evidence showing a correlation between the combined use of alcohol and cocaine and violence, that this relationship was stronger when both drugs were ingested together rather than individually, and that Roberts was addicted to both. *Id.* However, during the sentencing hearing itself, Roberts's counsel attempted to ask Dr. McQueen, "[W]as there some or is there some relationship to Donnie Roberts'[s] dependence on alcohol, dependence on cocaine, dependence on a combination thereto in relationship to the events of the [day of the murder]?" *Id.* at 529–30. The prosecution objected and the objection was sustained. *Id.* at 530.

On direct appeal before the TCCA, Roberts argued that, by not permitting Dr. McQueen to testify that his combined use of alcohol and drugs caused him to commit the offense, the trial court excluded constitutionally relevant mitigating evidence. *Id.* at 528. The TCCA first noted that Roberts's "brief fails to address the reason the trial court did exclude the evidence: that appellant had failed to make the requisite showing of reliability under [Texas] Rule [of Evidence] 702." *Id.*[1] "Consequently," the TCCA concluded, "[Roberts]'s briefing

---

[1] Texas Rule of Evidence 702 provides that "[i]f scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise." In the capital context, *Kelly v. State*, 824 S.W.2d 568 (Tex. Crim. App. 1992), provides the governing standard for evaluating the relevance and reliability of expert testimony.

Roberts's brief before the TCCA noted that "the trial court would not allow [his expert]

is inadequate, and his point of error is subject to rejection on that ground alone." *Id.* On this point, the TCCA cited to Texas Rule of Appellate Procedure 38.1, which, *inter alia*, provides that "[t]he brief must contain a clear and concise argument for the contentions made, with appropriate citations to authorities and to the record." TEX. R. APP. PROC. 38.1(i). However, the TCCA then stated, "Nevertheless, we turn to the merits." *Roberts*, 220 S.W.3d at 528. The TCCA proceeded to reject Roberts's claim on the merits, *id.* at 528–31, holding that "the trial court could reasonably conclude that [Dr. McQueen's] pharmacological knowledge and [previous] studies were not a sufficient basis from which to draw a scientific conclusion about how any particular individual would behave." *Id.* at 530. The district court noted that the TCCA rejected Roberts's claim on procedural grounds, but apparently did not agree with its reasoning: "The parties have not cited, and this Court has not found, authority holding that the rule forbidding inadequate briefing is strictly or regularly applied evenhandedly to the vast majority of similar claims. In light of this uncertainty, the Court finds it easier to resolve this claim on its merits." *Roberts*, 2011 WL 5433982, at *14. The district court then considered Roberts's claim on the merits and concluded that "the state court's rejection of this claim was neither contrary to, nor the result of an unreasonable application of, clearly established federal law, as

---

to give her ultimate opinion that [Roberts's] drug use caused Roberts to commit the crime in this case." Roberts only referred to the issue of relevancy when he stated, without providing any citations, that "[s]uch evidence [as it relates to the circumstances of the particular offense] is . . . so highly relevant according to the Supreme Court that it may not be excluded." Roberts may have been attempting to argue, relying on *Lockett v. Ohio*, 438 U.S. 586 (1978), and *Tennard v. Dretke*, 542 U.S. 274 (2004), that state relevancy requirements must yield to the constitutional guarantee that "the [capital] sentencing process must permit consideration of the character and record of the individual offender and the circumstances of the particular offense as a constitutionally indispensable part of the process of inflicting the penalty of death." *Lockett*, 438 U.S. at 601 (citation and internal quotation marks omitted). But Roberts never actually made this point before the state courts—at least not with any clarity—nor did he cite to any of the relevant Texas statutes or cases that govern this area of law. Indeed, Roberts makes no reference to procedural default in his briefing on this claim before this court.

No. 11-70032

determined by the Supreme Court of the United States in *Tennard* [and] *Barefoot . . . .*" *Id.* at 16.

While the TCCA may well have disposed of Roberts's claim on grounds of procedural default, its analysis was brief and a credible argument could be made that the TCCA was merely noting—rather than holding—that Roberts's claim was inadequately briefed and thus *could* be "subject to rejection on that ground alone." *Roberts*, 220 S.W.3d at 527. If the TCCA did find Roberts's claim procedurally barred, then we must first consider whether this conclusion precludes review of the substance of his habeas claim. *See Rocha v. Thaler*, 619 F.3d 387, 400 (5th Cir. 2010). Given that the TCCA "clearly and expressly" relied on Texas's rule regarding adequate briefing in disposing of Roberts's claim on this procedural ground, *Finley*, 243 F.3d at 218, we must examine the TCCA's application of this rule in previous cases. We have not had occasion to consider this issue within our circuit.[2]

A survey of the TCCA's capital sentencing jurisprudence reveals that it regularly rejects claims, both on direct and postconviction review, on the basis that these claims are inadequately briefed. *See, e.g.*, *Leza v. State*, 351 S.W.3d 344, 358 (Tex. Crim. App. 2011) ("The appellant directs us to nowhere in the record where any such complaints were registered in the trial court, nor have we found any. Nor does he now offer any justification for treating these arguments

---

[2] This court has encountered inadequate briefing as a form of procedural default in habeas cases arising from the Texas courts, but has either not had occasion to consider it directly or has only addressed it in the COA context. In *Salazar v. Dretke*, 419 F.3d 384, 395–96 (5th Cir. 2005), this court confronted a situation where the TCCA had rejected a petitioner's argument on procedural grounds of inadequate briefing. However, the district court concluded that the State had failed to invoke the procedural bar doctrine before the trial court and had abandoned this claim on appeal. *Id.* at 395 n.20. Accordingly, the panel did not address this issue. In *Heizelbetz v. Johnson*, No. 98-41474, 1999 WL 642862, at *6 (5th Cir. July 26, 1999), an applicant for a COA was denied the certificate on a claim that the TCCA concluded was inadequately briefed. The panel concluded that the applicant had failed to "make a credible showing that his claim [wa]s not procedurally barred." *Id.*

as immune from ordinary principles of procedural default, in contemplation of the framework for error preservation . . . . For this reason, we regard his arguments under this point of error as inadequately briefed and decline to reach their merits.") (footnotes omitted); *Lucio v. State*, 351 S.W.3d 878, 896 (Tex. Crim. App. 2011) ("Appellant's brief contains no argument or citation to any authority that might support an argument that if she is guilty, she is guilty only of injury to a child. . . . We decide that this point of error is inadequately briefed and presents nothing for review as this Court is under no obligation to make appellant's arguments for her."); *Murphy v. State*, 112 S.W.3d 592, 596 (Tex. Crim. App. 2003) ("[B]ecause appellant does not argue that the Texas Constitution provides, or should provide, greater or different protection than its federal counterpart, appellant's point of error is inadequately briefed."); *Salazar v. State*, 38 S.W.3d 141, 147 (Tex. Crim. App. 2001) (dismissing multiple claims on grounds that "[a]ppellant has briefed these points together, but his brief presents no authority in support of his argument"); *Heitman v. State*, 815 S.W.2d 681, 690 n.23 (Tex. Crim. App. 1991) ("We do not, by this opinion, retreat from our [prior] pronouncement . . . that briefs asserting rights under Article I, Sec. 10 of the Texas Constitution were inadequate if they did not provide either argument or authority in support of that assertion.").

While the district court was correct to note that we have not decided whether Texas's rule regarding inadequate briefing in the capital context constitutes a valid procedural bar to federal habeas relief, we hold now that under the prevailing standards, Texas's rules have been "regularly followed by [its] courts, and applied to the majority of similar claims." *Finley*, 243 F.3d at 218. Other district courts in our jurisdiction have held as much. *See, e.g.*, *Woodard v. Thaler*, 702 F. Supp. 2d 738, 750–51 & n.9 (S.D. Tex. 2010).[3] Our

---

[3] One exception is *Oliver v. Dretke*, No. 1:04CV041, 2005 WL 2403751, at *9 (E.D. Tex. Sept. 29, 2005), where the court found that "[i]t is not clear that Rule 38.1 has been so

sister courts of appeal, in addressing analogous provisions from other states, have likewise found them to act as independent and adequate state procedural bars. *See House v. Hatch*, 527 F.3d 1010, 1029–30 (10th Cir. 2008) (holding that New Mexico's requirement of adequate briefing is an independent and adequate procedural bar to federal habeas relief); *Clay v. Hatch*, 485 F.3d 1037, 1040–41 (8th Cir. 2007) (holding that Arkansas's proper abstracting rule is an independent and adequate procedural bar to federal habeas relief).

In this case, *if* the TCCA did invoke the briefing requirements of Texas Rule of Appellate Procedure 38.1 to bar Roberts's claim, then its determination constituted an independent and adequate state ground for denial of relief that procedurally bars federal habeas review. Moreover, Roberts cannot show any cause for his default nor does he claim that any miscarriage of justice would result from enforcing such a bar. *See Coleman v. Thompson*, 501 U.S. 722, 750 (1992). Consequently, we disagree with the district court's determination that Roberts's inadequate briefing does not pose a bar to federal habeas review.

However, because a credible argument could be made that the TCCA did not expressly bar Roberts's claim, we also consider the merits of his claim. Roberts concedes that Dr. McQueen was permitted to testify that Roberts was addicted to alcohol and cocaine, and that there is "a very strong connection between substance use and dependence and violent acts and, in particular, between dependence on both alcohol and cocaine and violent acts." *Roberts*, 220 S.W.3d at 531 (internal quotation marks omitted). Nevertheless, Roberts appears to take issue with the TCCA's conclusion, adopted by the district court, that "the trial court [did not] err[] when it decided to prevent Dr. McQueen from

---

consistently applied as to constitute an adequate and independent state ground for decision, [and so] the Court finds that the issue has not been procedurally defaulted." The district court provided nothing—neither citations nor reasoning—beyond this bald statement. Such conclusory statements are unpersuasive.

taking the extra step of opining whether alcohol and drug dependence was related to [Roberts]'s violent conduct" on the night of the murder. *Id.* Roberts argues that this restriction left Dr. McQueen's testimony "in the abstract and not personal so that the jury could give effect to the mitigating evidence that 'reduced the defendant's moral blameworthiness' as contemplated in *Tennard* [*v. Dretke*, 542 U.S. 274 (2004)]."

Roberts's argument appears to rest on both *Tennard*—where the Court held that the Eighth Amendment requires that the jury be able to consider and give meaningful effect to a capital defendant's mitigating evidence—and *Barefoot v. Estelle*, 463 U.S. 880 (1983)—where the Court refused to enact a constitutional per se bar to expert testimony regarding a defendant's future dangerousness. But neither case, either individually or in combination, supports Roberts's claim. The jury was not prevented from giving meaningful effect to the testimony of Dr. McQueen; rather, Dr. McQueen was prevented from specifically stating that Roberts's dependence on drugs and alcohol caused him to commit the homicide. This restriction came after Dr. McQueen was unable to show any reliable basis for such testimony, being unable to cite any specific scientific research for her conclusions. *Roberts*, 220 S.W.3d at 528–29. Nonetheless, Dr. McQueen was permitted to testify broadly and the jury was fully entitled to draw Roberts's preferred inference that drugs and alcohol were mitigating factors in the crime after hearing Dr. McQueen's testimony. We see no unreasonable application of *Tennard* by the TCCA in upholding the trial court's limitation on Dr. McQueen's testimony.

Moreover, Roberts has shown no unreasonable application of *Barefoot*. Dr. McQueen was permitted to testify about Roberts's drug and alcohol addiction and the relationship of such an addiction to violent behavior. Indeed, Roberts was permitted to present the testimony of a second expert confirming the impact of Roberts's cocaine and alcohol addiction on his psychology and opining that

Roberts would not pose a future danger. *Barefoot* stands for the proposition that expert testimony predicting a defendant's future dangerousness is not per se inadmissible. *See Barefoot*, 463 U.S. at 896–97 (explaining that because future dangerousness "is a constitutionally acceptable criterion for imposing the death penalty," and it is "not impossible for even a lay person sensibly to arrive at that conclusion, it makes little sense, if any, to submit that psychiatrists, out of the entire universe of persons who might have an opinion on the issue, would know so little about the subject that they should not be permitted to testify").[4] *Barefoot* does not require that *any* mitigating testimony that might be offered by an expert be admitted into evidence. Accordingly, the TCCA did not unreasonably apply federal law when it affirmed the trial court's restrictions on Dr. McQueen's testimony.

In sum, Roberts's claim is both procedurally barred and fails on the merits. Consequently, we affirm the district court's denial of habeas relief on this claim.

*C. Roberts's Second Claim: Ineffective Assistance of Counsel*

Roberts's second claim on appeal is that he was denied the effective assistance of counsel when his trial lawyer failed to object to testimony from the victim of a robbery that Roberts previously committed. *See Roberts*, 2011 WL 5433982, at *16. To provide the setting, at the sentencing phase of Roberts's trial, the State introduced evidence of a series of Roberts's prior offenses, including a confession to law enforcement officers that he had committed a previous murder and a confession that he had badly injured his brother on his brother's wedding night. As part of this evidence, the prosecution called Elizabeth Thomas, the victim of a robbery by Roberts, to testify about the robbery and the anxieties and emotional problems that the robbery had caused

---

[4] Moreover, as the district court properly observed, there are questions about the ongoing vitality of *Barefoot* in the wake of *Daubert v. Merrell Dow Pharmaceuticals*, 509 U.S. 579 (1993). *See Flores v. Johnson*, 210 F.3d 456, 464–66 (5th Cir. 2000) (Garza, J., concurring).

her. *Roberts*, 220 S.W.3d at 531.[5] The testimony about Roberts's prior offenses was followed by testimony from the mother, father, and son of the victim for whose death Roberts was on trial about the impact of the murder on them.  On direct appeal to the TCCA, Roberts contended that Thomas's testimony about the impact of Roberts's robbery on her life was improper victim impact evidence under the TCCA's holding in *Cantu v. State*, 939 S.W.2d 627, 637 (Tex. Crim. App. 1997), and that counsel should have objected to its introduction. The TCCA disagreed that Thomas's testimony constituted improper victim impact evidence, explaining that "'[v]ictim impact' evidence is evidence of the effect of an offense on people other than the victim. . . . [and] [t]he evidence presented here was evidence of the effect on a different offense on *the victim* (of the extraneous offense) . . . ." *Roberts*, 220 S.W.3d at 531 (footnote omitted) (emphasis in original). The TCCA then concluded that the evidence was admissible and "even if it weren't, counsel was not ineffective for failing to lodge an objection based upon a case that is clearly distinguishable from the present case." *Id.* The district court surveyed *Cantu* and other cases dealing with this class of evidence and concluded that the TCCA's position was not unreasonable because "Roberts's trial counsel could reasonably have believed, based upon state court precedent, that objecting to the admission of the victim impact evidence in his case would have been futile." *Roberts*, 2011 WL 5433982, at *20.

Ineffective assistance of counsel claims are governed by the standards laid out in *Strickland v. Washington*:

> First, the defendant must show that counsel's performance was deficient. . . . Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both

---

[5] The State also had two experts testify that Roberts suffered from various psychological disorders and would pose a future danger.

showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable.

466 U.S. 668, 687 (1984). In order to satisfy the performance prong, "the defendant must show that counsel's representation fell below an objective standard of reasonableness." *Id.* at 688. "The proper measure of attorney performance remains simply reasonableness under prevailing professional norms." *Id.*; *see also Wiggins v. Smith*, 539 U.S. 510, 521 (2003). *Strickland*'s second prong focuses on the result of counsel's deficient performance: "When a defendant challenges a death sentence . . . , the question is whether there is a reasonable probability that, absent the errors, the sentencer . . . would have concluded that the balance of aggravating and mitigating circumstances did not warrant death." *Id.* at 695. In this context, "[a] reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694. Put differently, "[i]n assessing prejudice under *Strickland*, the question is not whether a court can be certain counsel's performance had no effect on the outcome or whether it is possible a reasonable doubt might have been established if counsel acted differently. . . . Instead, *Strickland* asks whether it is 'reasonably likely' the result would have been different." *Harrington v. Richter*, 131 S. Ct. 770, 791–92 (2011) (citations and internal quotation marks omitted). Thus, *Strickland* demands that the likelihood of a different result "must be substantial, not just conceivable." *Id.* at 792.

However, this two-prong standard is itself subject to the dictates of AEDPA. "Surmounting *Strickland*'s high bar is never an easy task. . . . Establishing that a state court's application of *Strickland* was unreasonable under § 2254(d) is all the more difficult. The standards created by *Strickland* and § 2254(d) are both highly deferential, . . . and when the two apply in tandem, review is doubly so . . . ." *Premo v. Moore*, 131 S. Ct. 733, 739–40 (2011) (citations

and internal quotation marks omitted). The Supreme Court has admonished that "[f]ederal habeas courts must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d). When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is *any* reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Id.* at 740 (emphasis added); *see also Harrington*, 131 S. Ct. at 785 ("The pivotal question is whether the state court's application of the *Strickland* standard was unreasonable. This is different from asking whether defense counsel's performance fell below *Strickland*'s standard. . . . A state court must be granted a deference and latitude that are not in operation when the case involves review under the *Strickland* standard itself.").

In the instant case, the key issue is whether Roberts's trial counsel was ineffective in failing to object to the testimony of a victim of an extraneous offense. We "ha[ve] made clear that counsel is not required to make futile motions or objections." *Koch v. Puckett*, 907 F.2d 524, 527 (5th Cir. 1990) (citing *Murray v. Maggio*, 736 F.2d 279, 283 (5th Cir. 1984) (per curiam)). Accordingly, if any objection by Roberts's trial counsel would have been futile, then the failure to object would not fall below the difficult standard enunciated above.

Determining whether an objection would have been futile depends on the state of the law regarding victim impact evidence. To be clear, the Eighth Amendment does not per se bar the introduction of victim impact evidence in capital cases. *See Payne v. Tennessee*, 501 U.S. 808, 827 (1991). Rather, the germane constitutional prohibition restricts the introduction of "evidence . . . that is so unduly prejudicial that it renders the trial fundamentally unfair" and violates the Due Process Clause of the Fourteenth Amendment. *Id.* at 825. However, the Court left questions about the relevancy of such evidence to the states. *Id.* at 826–29.

16

No. 11-70032

In a series of cases beginning with *Ford v. State*, 919 S.W.2d 107 (Tex. Crim. App. 1996), the TCCA set about fleshing out this standard.[6] Most relevant for our purposes is *Mathis v. State*, 67 S.W.3d 918 (Tex. Crim. App. 2002), where the TCCA confronted a situation in which a defendant had shot three people, killing one and leaving another quadriplegic, but the defendant was on trial only for the murder. *Id.* at 927. At the defendant's sentencing, the State called the nurse of the paralyzed victim to discuss the victim's medical care needs. *Id.* at 928. The TCCA allowed the evidence, explaining:

> Unlike in [previous cases], in which the evidence involved testimony regarding both the victim's good qualities and the effect that her death had on family members, *the testimony in the present case did not involve testimony about how third persons were affected by the crime, nor was there any discussion about the character of the victim.* [The nurse]'s testimony focused solely on the medical procedures involved in the care of [the victim]. Appellant's characterization of [the nurse]'s testimony as victim impact evidence is incorrect.

*Id.* at 928 (emphasis added). *Mathis* and its reasoning figured prominently in shaping two later TCCA decisions. In *Guevara v. State*, 97 S.W.3d 579, 583–84 (Tex. Crim. App. 2003), the TCCA held that the testimony of a victim of an extraneous offense about the impact of that offense on another victim's mental impairment was permissible under *Mathis*. The TCCA further expanded on this reasoning in *Garcia v. State*, 126 S.W.3d 921, 929 (Tex. Crim. App. 2004), when

---

[6] Initially, the TCCA drew on *Payne* in concluding that certain kinds of victim impact evidence might plausibly be relevant to a defendant's moral culpability for capital murder. *Ford*, S.W.2d at 115–16. The next year, however, in *Cantu v. State*, the TCCA circumscribed this ruling. In *Cantu*, the defendant was involved in the murder of two teenage girls, but was initially tried for one of the murders. *Cantu*, 939 S.W.2d at 631. During his capital sentencing hearing, the prosecution introduced the testimony of the mother of the victim not named in the indictment. *Id.* at 635–36. The TCCA held that it was error for the trial court to admit this evidence as "[t]he danger of unfair prejudice to a defendant inherent in the introduction of 'victim impact' evidence with respect to a victim not named in the indictment on which he is being tried is unacceptably high." *Id.* at 637. Such evidence was irrelevant and inadmissible for the purposes of capital sentencing, the TCCA concluded, effectively combining both inquiries. *Id. Cantu*'s reach has, in turn, been circumscribed by the decisions we describe below.

17

confronted with the prosecution's attempt to introduce medical records from a bystander wounded in the defendant's shooting of a police officer:

> In *Mathis v. State* . . . we stated that "victim impact evidence" is "generally recognized as evidence concerning the effect that the victim's death will have on others, particularly the victim's family members." Appellant mischaracterizes Luna's medical records as victim impact evidence. The records did not reveal anything about Luna's good character or how third persons were affected by the death of the victim named in the indictment (the police officer). The records reflected in the most technical terms Luna's medical condition while in the hospital. While the records might have been irrelevant or inadmissible for other reasons, they were not irrelevant or inadmissible because they were victim impact evidence, as appellant claims.

This was the state of Texas law at the time of Roberts's trial in 2004.[7] Under AEDPA, we must ask "whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard," *Premo*, 131 S. Ct. at 740, given the above legal framework and our holding that the failure to lodge futile objections does not qualify as ineffective assistance. *Koch*, 907 F.2d at 527. Roberts seeks to persuade us that there is no such argument given that three of the TCCA's judges dissented from the majority's finding that the facts of Roberts's case differed from those of *Cantu. Roberts*, 220 S.W.3d at 535–36 (Meyers, J., dissenting). But the dissent of some judges does not mean that no reasonable argument could be made supporting the TCCA's conclusion that

---

[7] The TCCA later handed down its opinion in *Mays v. State*, 318 S.W.3d 368, 393 (Tex. Crim. App. 2010), in which it upheld the admissibility in a capital sentencing of the testimony of two officers involved in a police shootout but who were not named as victims of the crimes for which defendants were tried because they testified regarding their own injuries and the losses in their lives. While *Mays* is directly on point with the situation facing Roberts, it was decided after Roberts's trial and so cannot be cited for the proposition that any objection by Roberts's trial counsel would have been futile. Naturally, "there is no general duty on the part of defense counsel to anticipate changes in the law." *Green v. Johnson*, 116 F.3d 1115, 1125 (5th Cir. 1997). However, counsel should endeavor to "present solid, meritorious arguments based on directly controlling precedent." *Ries v. Quarterman*, 522 F.3d 517, 532 (5th Cir. 2008) (citation and internal quotation marks omitted).

Roberts's trial counsel concluded that *Cantu* was "clearly distinguishable" from Roberts's situation. *Id.* at 531. Indeed, the TCCA cited *Mathis*, *Guevara*, and *Garcia*—all cases that highlighted the fact that *Cantu*'s holding did not apply to testimony dealing with the impact of an extraneous offense on a victim of that extraneous offense—to this effect. *Id.* at 531 n.25. It would not have been an unreasonable application of *Strickland* to conclude, as the TCCA and the district court did, that any objection by Roberts's trial counsel would have been futile in light of the TCCA's post-*Cantu* "victim impact" jurisprudence. *See Adams v. Thaler*, 421 F. App'x 322, 332–34 (5th Cir. 2011) ("[Appellate] counsel could have reasonably concluded that pursuing the argument that [the] . . . testimony [of a victim injured during the capital offense but whose injuries were not part of the capital indictment] was inadmissible would have been futile in light of the TCCA's holding in *Mathis* that certain testimony about a victim injured in the same criminal episode is admissible.").

Our conclusion is bolstered by AEDPA's standard of review. We are not reviewing the TCCA's evaluation of its own precedents, but instead applying *Strickland*'s deferential standard under the auspices of AEDPA. And under AEDPA, "[a] state court must be granted a deference and latitude that are not in operation when the case involves review under the *Strickland* standard itself." *Harrington*, 131 S. Ct. at 785.

We affirm the district court's denial of relief on Roberts's second claim on appeal.

*D. Roberts's Third Claim: Execution Impact Testimony*

The third claim that Roberts received a COA for and raises on appeal is that the trial court violated his right to be free from cruel and unusual punishment when it denied his niece the opportunity to testify about how his execution would impact her. *See Roberts*, 2011 WL 5433982, at *23. When Roberts proposed to ask his niece about the impact of his execution on her, the

prosecution objected and the trial court upheld the objection. *Roberts*, 220 S.W.3d at 532. Roberts did not make an offer of proof as to what his niece's testimony would have been. *Id.* The TCCA concluded that Roberts failed to preserve this error by failing to make an offer of proof, and that the state trial court did not abuse its discretion by excluding this testimony. *Id.* The district court found Roberts's claim to be procedurally defaulted and that Roberts had not argued that he fell within any of the relevant exceptions. *Roberts*, 2011 WL 5433982, at *23. Thus, the district court dismissed his claim with prejudice. *Id.*

We first consider the question of procedural default. The requirement of an offer of proof comes from Texas Rule of Evidence 103(a)(2), which provides that "[e]rror may not be predicated upon a ruling which . . . excludes evidence unless a substantial right of the party is affected, and . . . the substance of the evidence was made known to the court by offer, or was apparent from the context within which questions were asked."[8] A short statement by counsel or even a brief question-and-answer with the witness will satisfy the offer of proof requirement. *Mays v. State*, 285 S.W.3d 884, 889–90 (Tex. Crim. App. 2009). The requirement may also be satisfied if "the substance of the evidence is apparent from the context within which the questions were asked." *Fairow v. State*, 943 S.W.2d 895, 897 n.2 (Tex. Crim. App. 1997).

In the present case, the TCCA clearly and expressly relied on Rule 103(a)(2) in adjudicating Roberts's claim. The relevant question, then, is whether the TCCA has applied this procedural requirement "strictly or regularly" in "the majority of similar claims" in the capital context. *Finley*, 243 F.3d at 218. A survey of the TCCA's capital jurisprudence reveals consistent application in capital cases. *See, e.g.*, *Mays*, 285 S.W.3d at 891 ("Because the appellant failed

---

[8] The TCCA also cited its decision in *Jackson v. State*, 33 S.W.3d 828, 838 (Tex. Crim. App. 2000), in holding that the trial court did not abuse its discretion by excluding Roberts's execution impact testimony.

to make a proper offer of proof, we hold that he did not preserve his complaint for appeal."); *Fairow*, 943 S.W.2d at 897 n.2 ("While it is true that appellant made no offer of proof indicating [the witness]'s answers to the questions, the substance of the evidence is apparent from the context within which the questions were asked."); *Williams v. State*, 937 S.W.2d 479, 489 (Tex. Crim. App. 1996) ("Moreover, appellant failed to make an offer of proof. To preserve error regarding the exclusion of evidence, an offer of proof is required."); *Chambers v. State*, 866 S.W.2d 9, 27 (Tex. Crim. App. 1993) ("Rule 103(a)(2) of the Rules of [] Evidence require that when evidence is excluded the proponent establish the substance of the excluded evidence by making on offer of proof. . . . Appellant wholly failed to explain why this evidence should have been permitted and what he hoped to establish with the evidence.") (citations omitted).

Moreover, we have previously made clear that the failure to preserve an issue for appeal by failing to make a proper offer of proof constitutes an independent and adequate procedural bar. *See Wheat v. Johnson*, 238 F.3d 357, 360 (5th Cir. 2001) ("We agree with the Texas Court of Criminal Appeals that the offer of proof was not properly preserved . . . . [Petitioner] makes no attempt on appeal to show either cause or prejudice for this procedural default; he is therefore barred from now bringing the claim on federal habeas review."). In his brief before us, Roberts does not attempt to show cause and prejudice or a fundamental miscarriage of justice, nor can we discern either exception.

Consequently, we affirm the district court's conclusion that Roberts's execution impact claim is procedurally barred.

### III. CONCLUSION

For the foregoing reasons, we AFFIRM the district court's denial of habeas relief to Roberts.