# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

No. 13-70005

United States Court of Appeals
Fifth Circuit

**FILED**

March 17, 2014

Lyle W. Cayce
Clerk

GREGORY RUSSEAU,

Petitioner - Appellant

v.

WILLIAM STEPHENS, DIRECTOR, TEXAS DEPARTMENT OF CRIMINAL
JUSTICE, CORRECTIONAL INSTITUTIONS DIVISION,

Respondent - Appellee.

Appeal from the United States District Court
for the Eastern District of Texas
USDC No. 6:10-CV-449

Before JOLLY, DAVIS, and PRADO, Circuit Judges.

PER CURIAM:*

Texas death row inmate Gregory Russeau appeals the district court's denial of federal habeas relief on his ineffective assistance of counsel, prosecutorial misconduct, and conflict of interest claims. We AFFIRM.

I.

On May 30, 2001, 75-year-old James Syvertson was murdered at his automobile repair garage in Tyler, Texas. The evidence presented at trial

---

* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 13-70005

established that he left home for work at around 7:00 a.m.  He ate lunch at a cafeteria around 11:00 a.m., and spoke with a customer around 11:30 or 11:45 a.m. about repairing a car for her employee, Bob Bruner.  Bruner dropped his car off at the garage around 12:30 p.m.  When he arrived the doors to the garage were locked and a gray Chevrolet Corsica and a gray Audi (both of which belonged to Mr. Syvertson) were parked outside.  Bruner called the garage at about 1:30 p.m. but the call was not answered.

Mr. Syvertson's wife went to the garage that afternoon and saw Mr. Syvertson's gray Chevrolet Corsica, the gray Audi, and Bruner's vehicle parked outside.  She knocked on the door but no one answered, so she left and went shopping.

Bruner returned to the garage to pick up his car at around 5:30 p.m. because he had not heard from Mr. Syvertson.  The same cars were parked outside.  No one responded when he knocked on the doors.

According to credit card records introduced at trial, Mrs. Syvertson made a purchase at 5:36 p.m. and then returned to her husband's garage after shopping.  His gray Corsica was still parked outside.  The office door was locked and she got no answer when she knocked.

Mrs. Syvertson was worried about her husband so she went home and got her daughter, Jeanette Jones.  They returned to the garage at about 7:00 p.m.  When they arrived, Mr. Syvertson's gray Corsica was gone, and the door to the office was unlocked.  Mrs. Syvertson went inside and found her husband's body on the garage floor, next to a white Chevrolet Corsica, which he apparently was working on at the time of his murder.  The wallet he usually carried and the keys he usually kept clipped to his belt loop were missing, and one of his pants pockets had been turned inside out.

Jones called 911 dand, when told by the 911 operator to move her father's body, she discovered that it was stiff.  The medical examiner determined that

No. 13-70005

Mr. Syvertson died from blunt-force head injuries that were consistent with being struck by a hammer or other object. Based on the contents of his stomach, she expressed an opinion that he died between 11:00 a.m. and 2:00 p.m.

A crime scene investigator with the Tyler Police Department found fingerprints and a palm print on the white Corsica next to Mr. Syvertson's body. The palm print was located in an area accessible only if the hood of the car was open. Those prints were determined in a later examination to be Russeau's prints. Russeau's trial counsel hired a fingerprint expert, who reviewed and agreed with the State's expert's findings.

Several witnesses testified that they saw Russeau in the vicinity of the garage on the day and evening of the murder. At about 7:30 that evening, Russeau asked some friends for a ride to his mother's house. On the way, he pointed to a gray Corsica parked behind a house and told them that it was his wife's car and that it had broken down. When the friends noticed the emergency vehicles at Mr. Syvertson's garage and wanted to drive past it, Russeau urged them not to do so.

Lashundra Hall testified that she saw Russeau smoking crack cocaine in Longview, Texas on the evening of May 30. When she saw him again at about 3:20 a.m. the next morning, he was driving a gray Corsica. She got in the car with him and they were stopped by Longview police about ten minutes later. A Longview police officer testified that the title and registration documents for the gray Corsica, which was confirmed as belonging to Mr. Syvertson, were found in Russeau's pocket. Mr. Syvertson's keys, which family members testified that he always kept clipped to his belt loop, were in the ignition.

After the police processed the crime scene, they released the garage to the victim's family. Tyler Police Detective Gregg Roberts asked the victim's son, David Syvertson, to go through the garage and search for anything that

3

No. 13-70005

seemed to be missing or out of place. On June 4, David Syvertson found that several tools were missing, and noticed that a hammer lying next to a container on a shelf was out of place. He reported this information to Detective Roberts, who collected the hammer, as well as the greasy bottle it was leaning against.

On June 5, Detective Roberts obtained hair samples from Russeau's chest. Hair samples could not be taken from his head because it was shaved. Detective Roberts testified that the nurse who plucked the hairs, Brenda Mills, put them into an envelope that he provided to her. After collecting the hairs, Detective Roberts took the samples to the Tyler Police property room.

On June 6, Detective Roberts retrieved from the property room the evidence bags containing the bottle, the hammer, and the envelope containing Russeau's chest hair samples, and took them to the Texas Department of Public Safety Crime Lab in Garland, Texas. A criminalist at the Crime Lab found two hairs on the top of the bottle. Detective Roberts testified that he did not see any hairs on the bottle when he collected it from the garage, but he explained that he did not conduct a thorough inspection because he did not want to handle it much and risk disturbing any trace evidence that might be present. On March 13, 2002, the Crime Lab reported that the DNA in the hairs found on the bottle was consistent with Russeau's DNA profile.

Attorneys Clifton Roberson and Brandon Baade were appointed to represent Russeau at trial. The prosecution's theory of the case was that Russeau murdered Mr. Syvertson between 11:30 a.m. and 1:00 p.m., and left the scene with Mr. Syvertson's wallet. After spending the afternoon buying and smoking crack cocaine, he then returned to the garage at approximately 6:00 p.m., when he stole Mr. Syvertson's gray Corsica. The defense theory was that Detective Roberts planted Russeau's hairs on the bottle retrieved from the crime scene and that although Russeau stole Mr. Syvertson's automobile, the prosecution failed to prove that he had murdered Mr. Syvertson. The jury

4

No. 13-70005

found Russeau guilty of capital murder committed during the course of a robbery.

At the punishment phase, Russeau's brother and sister testified as mitigation witnesses. Defense counsel then asked for an *ex parte* hearing. At that hearing, defense counsel told the court they had three additional persons they wanted to call as mitigation witnesses, but that Russeau had instructed them not to call any more witnesses.[1] The trial court addressed Russeau, who confirmed that his lawyers were following his instructions not to call any additional witnesses. Russeau said he knew he was going to get the death penalty anyway, and did not want to put any more stress on his family.

The trial court sentenced Russeau to death after the jury answered affirmatively the special issues on future dangerousness and whether Russeau caused Mr. Syvertson's death and answered negatively the special issue on mitigation. The trial court appointed Don Killingsworth to represent Russeau on direct appeal and appointed Jeff Haas to represent him in state post-conviction proceedings.

On October 15, 2004, while the direct appeal was pending, Haas filed a state habeas application in the trial court. He asserted three claims: (1) the trial court interfered with Russeau's Sixth Amendment right to counsel, resulting in the failure to offer mitigation evidence at the punishment phase; (2) trial counsel provided ineffective assistance by failing to call witnesses to

---

[1] The three witnesses defense counsel wanted to call were (1) Russeau's fourth grade teacher, Irma Miller, to testify that Russeau was a slow learner and had learning disabilities; (2) Phenicee Neal, the mother of Russeau's child who was born with a birth defect, to testify that Russeau had a special relationship with his daughter; and (3) Tyler Police Officer Ricky Graham, to testify that in 1999, while Russeau was assisting the Tyler Police as a confidential informant, he made accusations that members of the Tyler Police Department provided him with crack cocaine, which led to an internal affairs investigation. The purpose of that testimony was to establish a motive for the police to plant evidence to frame Russeau for Mr. Syvertson's murder.

contradict the State's testimony at the guilt-innocence stage;[2] and (3) trial counsel provided ineffective assistance by failing to develop the probability, if not a possibility, that hair evidence was planted by the police.

On December 2, 2004, the state trial court conducted an evidentiary hearing on the claims raised in the state habeas application. Roberson and Baade, Russeau's trial counsel, testified at the hearing and, after being ordered to do so by the trial court, answered questions about their discussions with Russeau about trial strategy regarding the decision not to cross-examine Mrs. Syvertson and their decisions with respect to the presentation of evidence in support of the theory that police planted Russeau's hairs on the bottle.

On February 7, 2005, the trial court entered findings of fact and conclusions of law, recommending that state habeas relief be denied. The court found that it was a theme of the defense that Russeau's hairs were planted on the bottle retrieved from the crime scene. The court found that the credible evidence is that the hairs were not planted by the Tyler Police Department and that trial counsel effectively raised the allegation of evidence being planted by the police. The court concluded that the evidence, regardless of the hair analysis, was sufficient to support the verdict and sentence and that the inclusion of the hair analysis evidence did not result in an erroneous judgment, did not result in a denial of Russeau's rights, and did not support a finding of ineffective assistance of counsel.

While Russeau's state habeas application was pending in the Texas Court of Criminal Appeals ("TCCA"), that court affirmed his conviction on direct appeal on June 29, 2005. *Russeau v. State*, 171 S.W.3d 871 (Tex. Crim.

---

[2] Russeau alleged that trial counsel rendered ineffective assistance at the guilt-innocence phase by failing to challenge alleged inconsistencies between Mrs. Syvertson's trial testimony and a statement she had given to a police officer after the murder, regarding her visits to the garage on the day of the murder, and by failing to develop the theory that the police planted his hairs on the bottle.

App. 2005).    However, the TCCA vacated Russeau's death sentence and remanded the case for a new punishment hearing on the ground that the Confrontation Clause was violated by the admission of prison disciplinary reports under the business records exception to the hearsay rule. *Id.* at 881. The Supreme Court of the United States denied Russeau's petition for a writ of certiorari regarding his conviction. *Russeau v. Texas*, 548 U.S. 926 (2006).

Although both Roberson and Baade had testified at the state habeas evidentiary hearing and there were ineffective assistance claims regarding their trial performance pending in the TCCA, the trial court appointed them to represent Russeau at the new punishment hearing.  In November 2005, the trial court granted defense motions for appointment of an investigator and for expert assistance for future dangerousness and mitigation issues.

At a pretrial hearing on November 17, 2006, in preparation for Russeau's second punishment hearing, Russeau asked the trial court to appoint different counsel.  He maintained that Roberson and Baade had waived the attorney-client privilege when they testified at the state habeas evidentiary hearing and that, as a result, the prosecution understood the defense strategy.  He also argued that they had provided ineffective assistance at his first punishment trial, and asserted that there had been a breakdown in communication between them.  The trial judge denied Russeau's request for different counsel, finding that Roberson and Baade had testified only because the trial court had ordered them to do so in order to decide the ineffective assistance claims in Russeau's state habeas application.  The trial court pointed out that it had found that trial counsel were not ineffective and that the TCCA had reached the same conclusion.  (The trial court was mistaken—the TCCA had not yet ruled on the claim at that time and did not adopt the trial judge's findings on it until 2011.)

No. 13-70005

At the second punishment hearing, conducted in April 2007, the State called as witnesses Dr. Sue Stone, Dr. Tynus McNeel, and forensic psychologist Edward Gripon, all of whom had also testified in the first punishment hearing, to testify regarding Russeau's future dangerousness. All three of them testified that, in the light of Russeau's criminal and prison records and the extreme nature of the murder, their professional opinion was that he would probably be a future danger to society. The State also presented evidence of Russeau's extensive criminal history, as well as the testimony of Texas Department of Corrections guards and local law enforcement officers who had dealt with Russeau over the years regarding his disciplinary history and conduct while in custody. The defense called only one witness at the second punishment hearing, a Tyler Police detective who was presented in an effort to cast doubt on Russeau's guilt of the murder of Mr. Syvertson. Although the record reflects that Russeau's counsel had family members and other witnesses ready to testify, Russeau, just as he did at his first punishment hearing, instructed his counsel not to call any mitigation witnesses. The trial court again sentenced Russeau to death after the jury answered affirmatively the special punishment issues on future danger and causing the death of Mr. Syvertson and answered negatively the special issue on mitigation. The trial court appointed Jeff Haas to represent Russeau in state habeas proceedings and appointed Don Killingsworth to represent Russeau on direct appeal.

On May 21, 2009, Haas filed a second state habeas application, alleging that trial counsel rendered ineffective assistance at the second punishment hearing by (1) failing to argue that Russeau's retrial on punishment only violated the Sixth, Eighth, and Fourteenth Amendments; (2) failing to request a hearing on the admissibility of the State's expert testimony regarding future dangerousness; and (3) failing to call any witnesses to challenge the State's experts' testimony that future dangerousness can be predicted. At the

8

evidentiary hearing on November 20, 2009, Russeau attempted to raise four additional claims, *pro se*, because Haas had refused to include them in the state habeas application. His fourth *pro se* claim challenged the trial court's refusal to appoint new counsel to represent him at the second punishment hearing. Although he did not identify the precise legal basis for the claim, he referred to the attorney-client privilege and his allegations of ineffective assistance of counsel in the first state habeas application.

On July 1, 2009, the TCCA affirmed Russeau's death sentence imposed following the second punishment hearing. *Russeau v. State*, 291 S.W.3d 426 (Tex. Crim. App. 2009).

On May 5, 2010, the trial court entered findings of fact and conclusions of law, recommending that Russeau's second state habeas application be denied. The court concluded that Russeau was not denied the effective assistance of counsel as a result of the trial court's refusal to appoint new counsel for his defense in the second punishment trial. The court stated that there had been no showing of any professional deficiency by trial counsel and no reasonable probability that but for counsel's unprofessional errors, the result of the trial would have been different. The court found further that there is nothing in the trial record that suggested that trial counsel were actually alienated by Russeau's claim that they rendered ineffective assistance in the first trial.

On August 25, 2010, the TCCA adopted the trial court's findings and conclusions and denied relief on all three claims raised in Russeau's second state habeas application. *Ex parte Russeau*, No. WR-61389-02, 2010 WL 3430765 (Tex. Crim. App. Aug. 25, 2010). The TCCA acknowledged Russeau's attempt to raise four additional claims at the evidentiary hearing, but refused to consider those claims on the merits, and expressly rejected the trial court's findings and conclusions as to those claims, because they were not properly

No. 13-70005

presented in the state habeas application pursuant to the provisions of Article 11.071 of the Texas Code of Criminal Procedure. *Id.* at *1. The TCCA also noted that Russeau did not have a right to hybrid representation. *Id.*

In February 2011, the TCCA adopted the trial court's findings and conclusions and denied state habeas relief as to the claims raised in Russeau's first state habeas application. *Ex parte Russeau*, No. WR-61389-01, 2011 WL 1158777 (Tex. Crim. App. Feb. 16, 2011).

On August 24, 2011, Russeau's federal habeas counsel filed a skeletal petition. They filed a supplemental petition on February 15, 2012, raising nine claims for relief. The district court denied federal habeas relief, but *sua sponte* granted a COA for three issues: (1) whether trial counsel rendered ineffective assistance by failing to argue at trial that law enforcement planted evidence; (2) whether Russeau's hairs found on the bottle collected from the crime scene were the product of prosecutorial misconduct in violation of his Fourteenth Amendment due process rights; and (3) whether Russeau was denied due process and the effective assistance of counsel during his second punishment trial when the trial court appointed the same attorneys who represented Russeau at his first trial while there were pending, unadjudicated claims of ineffective assistance of counsel against those attorneys regarding their performance at the first trial. *Russeau v. Thaler*, No. 6:10-CV-449, 2012 WL 6706019 (E.D. Tex. Dec. 26, 2012).

## II.

The district court's grant of a COA to Russeau gives this Court jurisdiction to review the claims certified by the district court. *See* 28 U.S.C. § 2253(c); *Miller-El v. Cockrell*, 537 U.S. 322, 335–36 (2003). "In an appeal of the district court's denial of habeas relief, this court reviews the district court's findings of fact for clear error and its conclusions of law *de novo*, applying the same standard of review that the district court applied to the state court

decision." *Roberts v. Thaler*, 681 F.3d 597, 603 (5th Cir. 2012) (internal quotation marks and citations omitted).

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), §§ 101-108, Pub. L. No. 104-132, 110 Stat. 1214 (codified as amended at 28 U.S.C. §§ 2244, 2253-2266), provides that a district court may not grant habeas relief with respect to any claim that was adjudicated on the merits in the state court proceedings, unless the state court's denial of relief

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

"A state court's decision is contrary to Supreme Court precedent if: (1) 'the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law'; or (2) 'the state court confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at a result opposite to [that of the Supreme Court].'" *Pippin v. Dretke*, 434 F.3d 782, 787 (5th Cir. 2005) (alterations in original) (quoting *Williams v. Taylor*, 529 U.S. 362, 405 (2000)). "'A state court's decision is an unreasonable application of clearly established federal law whenever the state court identifies the correct governing legal principle from the Supreme Court's decisions but applies that principle to the facts of the prisoner's case in an objectively unreasonable manner.'" *Id*. (quoting *Young v. Dretke*, 356 F.3d 616, 623 (5th Cir. 2004)). "An unreasonable application may also occur if 'the state court either unreasonably extends a legal principle from [Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply.'" *Id*. at 787–

88 (alteration in original) (quoting *Young*, 356 F.3d at 623). The state court's factual findings are presumed to be correct unless a petitioner "rebut[s] the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1).

A federal court may not grant habeas relief to a state prisoner unless "the applicant has exhausted the remedies available in the courts of the State." 28 U.S.C. § 2254(b)(1)(A). However, habeas relief may be denied on the merits, notwithstanding the petitioner's failure to exhaust state court remedies. 28 U.S.C. § 2254(b)(2). "If a prisoner fails to exhaust state remedies and the court to which the prisoner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred due to the prisoner's own procedural default, federal courts are barred from reviewing those claims." *Woodfox v. Cain*, 609 F.3d 774, 793 (5th Cir. 2010) (internal quotation marks and citation omitted). Further, this Court "may not review a habeas claim if the last state court to consider that claim expressly relied on a state ground for denial of relief that is both independent of the merits of the federal claim and an adequate basis for the court's decision." *Roberts*, 681 F.3d at 604 (emphasis, internal quotation marks, and citation omitted). "Thus, as a rule, a state prisoner's habeas claims may not be entertained by a federal court when (1) a state court has declined to address those claims because the prisoner had failed to meet a state procedural requirement, and (2) the state judgment rests on independent and adequate state procedural grounds." *Id.* (alterations, internal quotation marks, and citations omitted).

A federal court may consider the merits of a procedurally defaulted claim if the petitioner shows "cause for the default and prejudice from a violation of federal law." *Martinez v. Ryan*, 132 S. Ct. 1309, 1316 (2012) (citing *Coleman v. Thompson*, 501 U.S. 722, 750 (1991)). In *Martinez*, the Supreme Court

answered a question left open in *Coleman*: "whether a prisoner has a right to effective counsel in collateral proceedings which provide the first occasion to raise a claim of ineffective assistance at trial." 132 S. Ct. at 1315. The Court held:

> Where, under state law, claims of ineffective assistance of trial counsel must be raised in an initial-review collateral proceeding, a procedural default will not bar a federal habeas court from hearing a substantial claim of ineffective assistance at trial if, in the initial-review collateral proceeding, there was no counsel or counsel in that proceeding was ineffective.

*Id.* at 1320. The standards of *Strickland v. Washington*, 466 U.S. 668 (1984), apply in assessing whether initial-review habeas counsel was ineffective. *Martinez*, 132 S. Ct. at 1318.

Although Texas does not preclude prisoners from raising ineffective assistance of trial counsel claims on direct appeal, the Court held in *Trevino v. Thaler*, 133 S. Ct. 1911 (2013), that the rule of *Martinez* nevertheless applies to Texas cases because "the Texas procedural system—as a matter of its structure, design, and operation—does not offer most defendants a meaningful opportunity to present a claim of ineffective assistance of trial counsel on direct appeal." *Id.* at 1921.

To succeed in establishing cause to excuse a procedural default of ineffective assistance of trial counsel claims, the petitioner must show that (1) his underlying claims of ineffective assistance of trial counsel are "substantial," meaning that he "must demonstrate that the claim[s] ha[ve] some merit," *Martinez*, 132 S. Ct. at 1318; and (2) his initial state habeas counsel was ineffective in failing to present those claims in his first state habeas application. *See id.*; *Trevino*, 133 S. Ct. at 1921.

No. 13-70005

III.

Having set forth the legal standards that govern our review, we now turn to address each of Russeau's claims.

A.

Russeau argues that his trial counsel rendered ineffective assistance by (1) failing adequately to investigate and develop the issue of whether the police planted the hairs found on the bottle; (2) failing to address whether the hairs had been plucked or had fallen out; (3) failing to question the State's witnesses concerning what area of the body the hairs originated from; and (4) failing to present expert testimony regarding how the hair samples were taken from Russeau, what area of the body the hairs came from, and whether they were plucked or fell out. Russeau argues that further testing by defense counsel to determine whether any trace of follicular tissue might have been present on the remaining hair shafts could have confirmed whether the hairs allegedly found on the bottle after it was removed from the crime scene had been plucked or had fallen out. He contends further that if Detective Roberts planted the just-plucked hairs he obtained from Russeau on the bottle, then further testing by the defense would have potentially exposed that fact. Russeau also complains that defense counsel failed to question the State's DNA expert about whether she saw any follicular material on the hairs found on the bottle, which would have suggested they were plucked from Russeau's body and planted on the bottle. Russeau asserts that he was prejudiced by defense counsel's failure to call an expert to corroborate his claim that the hairs found on the bottle were plucked, because such testimony would have tied the hairs plucked from Russeau's body to the hairs on the bottle and would have further bolstered his claim of police misconduct, likely resulting in an acquittal.

The clearly established federal law governing ineffective assistance of counsel claims is set out in *Strickland v. Washington*. "First, the defendant

must show that counsel's performance was deficient." 466 U.S. at 687. "Second, the defendant must show that the deficient performance prejudiced the defense." *Id.* To show deficient performance, "the defendant must show that counsel's representation fell below an objective standard of reasonableness." *Id.* at 688. To demonstrate prejudice, a petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* "Unless a defendant makes both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable." *Id.* at 687.

"Federal habeas courts must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d). When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Premo v. Moore*, 131 S. Ct. 733, 740 (2011); *see also Harrington v. Richter*, 131 S. Ct. 770, 785 (2011) ("The pivotal question is whether the state court's application of the *Strickland* standard was unreasonable. This is different from asking whether defense counsel's performance fell below *Strickland*'s standard. . . . A state court must be granted a deference and latitude that are not in operation when the case involves review under the *Strickland* standard itself.").

Russeau presented this claim in his first state habeas application. At the post-conviction evidentiary hearing, trial counsel Brandon Baade testified that it was one of the themes during trial that the hairs found on the bottle had been planted. He acknowledged that the possibility of the hair having been forcibly removed was important, but said that because the roots had been removed from the hair shafts and had been consumed by the State's DNA

testing, the defense expert could not make a determination whether the hairs were plucked or how they may have been removed or what region of the body they came from.  He said that he was not contacted by the prosecution regarding the DNA tests that were going to be conducted and would consume the roots of the hairs.  Roberson, Russeau's other trial attorney, testified similarly that the defense hair expert could not do anything with the hairs because the roots had been consumed during the State's testing.

The TCCA adopted the trial court's finding and conclusion that trial counsel effectively raised the allegation of evidence being planted by the Tyler Police Department, but that the credible evidence is that the hairs were not planted by the police.

The district court held that because Russeau offered no reason why his attorneys should not have relied on the advice of their expert witness, he had failed to establish that it was unreasonable for the state court to have found that he had not overcome the strong presumption of his counsel's competence.

The district court correctly held that the state court's denial of relief on this claim was neither contrary to, nor an unreasonable application of, *Strickland*.  The record supports the state court's finding that trial counsel effectively raised the allegation that the hairs were planted on the bottle after it was removed from the crime scene.  In the opening statement at the guilt-innocence phase of trial, defense counsel argued that if the State's expert had not consumed the roots of the hairs, it would have been possible to tell if the hairs were plucked or just fell out.  In cross-examination of Detective Roberts, defense counsel elicited testimony that Roberts did not see any hairs on the bottle when he collected it and that he did not count the number of hairs plucked from Russeau by Nurse Mills.  On cross-examination of Nurse Mills, defense counsel elicited testimony that Nurse Mills did not count the number of hairs she plucked from Russeau, that her initials were not on the envelope

containing the hair samples that she collected, and that it was possible that she handed the hairs to Detective Roberts and allowed him to put them in the envelope.  On cross-examination of Anita Lewis, the custodian of the property room at the Tyler Police Department, defense counsel elicited testimony that she did not initial evidence when receiving it or releasing it because their procedures did not require that, and that the way the hair samples were packaged was not tamper-resistant.  Officer Lewis also conceded on cross-examination that Detective Roberts could have taken the evidence out of one envelope and put it in another, and there would be no way for anyone to know.  On cross-examination of the State's DNA expert, Lorna Beasley, defense counsel elicited testimony that there was no way the Crime Lab could know that evidence-tampering had occurred if the bottle arrived at the lab after someone had put hairs on it.

As the State points out, Russeau has not identified any specific evidence that could have been uncovered by further investigation, has not explained how further investigation would have resolved the question whether the hairs discovered on the bottle retrieved from the crime scene were plucked or merely fell out, and has not explained how a showing that the hairs found on the bottle were plucked would have proved that they were planted by Detective Roberts.  Because the roots of the hairs found on the bottle were consumed during testing by the Crime Lab, the defense expert could not have examined any follicular material to determine whether it was consistent with forcible extraction.

Furthermore, Russeau cannot demonstrate that he was prejudiced by the alleged deficiencies in counsel's performance, because his hair was not the only evidence that placed him at the scene of the crime on the day of the murder.  Russeau's finger and palm prints were found on the white Corsica inside the garage, next to Mr. Syvertson's body.  The palm print was inside the

17

hood of the car and could only have been left there when the hood of the car was open. Although Russeau points out that the white Corsica was parked outside the garage for several days before the murder, he points to no evidence that the hood was open and that the vehicle's engine compartment was accessible to his hands while the vehicle was parked outside.

Additional evidence of Russeau's presence at the crime scene on the day of the murder is the testimony that Mr. Syvertson always carried his car keys on his belt. When his body was discovered, the keys were no longer on his belt, but were in Russeau's possession when he was arrested early in the morning of the day after the murder, driving Mr. Syvertson's car. In the light of the additional evidence placing Russeau inside the garage on the day of the murder, the state habeas court reasonably could have concluded that the jury would have convicted Russeau even without the hairs from the bottle, and its denial of relief on this claim was not based on an unreasonable application of *Strickland*. We therefore affirm the district court's denial of federal habeas relief on Russeau's ineffective assistance of trial counsel claim.

### B.

We now turn to consider Russeau's claim that Detective Roberts planted Russeau's hairs on the bottle recovered from the crime scene, in violation of his Fourteenth Amendment due process rights.

As we have already noted, the trial court found, in adjudicating Russeau's ineffective assistance of counsel claim, that the police did not plant evidence. The district court held that although Russeau had shown that it was possible that the hairs found on the bottle could have been planted by Detective Roberts, his evidence fell well short of showing that it was unreasonable for the state court to have found that they were not. The district court denied relief on the claim because the state court's decision was not based on an

unreasonable determination of the facts in the light of the evidence presented in the state court proceedings.

Russeau contends that the state trial court's decision is unreasonable because it ignores the circumstantial evidence that strongly suggests that Detective Roberts planted the hairs on the bottle and then lied about it at trial. Russeau relies on the following circumstantial evidence to support his claim:

(1) His head was shaved at the time the hair samples were taken, but Nurse Mills, who obtained the hair samples, testified initially that she plucked hairs from his head, then later admitted that she could only have plucked them from his chest.

(2) Neither Nurse Mills nor Detective Roberts counted the number of hairs that were plucked from Russeau's chest.

(3) Nurse Mills did not seal the envelope containing the chest hairs in a way that would allow a determination of whether Detective Roberts opened and then resealed the envelope before it was taken to the Crime Lab.

(4) No precautions were taken to seal the bottle in a way to prevent tampering, and so there is no way to know whether Detective Roberts opened the bag containing the bottle, placed Russeau's hairs on the bottle, and then resealed the bottle in a new bag with new evidence tape prior to delivering the items to the Crime Lab.

(5) Detective Roberts testified that when he collected the bottle from the crime scene, he did not notice any hairs on it, yet the criminalist at the Crime Lab found the hairs simply by looking at the bottle with a flashlight.

Russeau argues that the hairs found on the bottle were the only evidence linking him to the crime scene. He discounts the finger and palm prints that he left on the white Corsica that Mr. Syvertson was repairing when he was murdered, asserting that his prints may have been left on the vehicle during the two or three days while it was parked outside the garage.

19

No. 13-70005

The district court held that Russeau's prosecutorial misconduct claim was adjudicated on the merits by the state court.  The State argues, however, that to the extent Russeau raised the issue of evidence-planting in state court, he did so only in the context of his Sixth Amendment ineffective assistance of counsel claim, and he did not assert a prosecutorial misconduct or due process claim.  The State argues that Russeau's allegation that the State knowingly presented false testimony, even if sufficient to present a Fourteenth Amendment claim, is not the same Fourteenth Amendment claim he presented in his federal habeas petition.  Finally, the State argues that even if Russeau did exhaust the claim, the district court correctly denied habeas relief because Russeau has not demonstrated that the state court unreasonably found that the police did not plant evidence.

In his state habeas application, Russeau asserted that it was possible that the State proffered false testimony which, if true, requires a new trial if the false testimony could have affected the jury's verdict.  In the alternative, he claimed that trial counsel rendered ineffective assistance by failing to present evidence to question the validity of the State's evidence regarding the hair analysis.  His proposed conclusions of law contained the following proposed conclusions:  "The destruction of the hair roots without allowing the defense a chance to test the hair roots for follicular tissue violates due process"; and "Defendant's due process rights under the Fourteenth Amendment were violated due to the destruction of the hair roots prior to his ability to have his experts examine these hair roots for the presence or absence of follicular tissue."

It is not necessary for us to decide whether Russeau exhausted this claim because, even if the district court erred by holding that the claim was adjudicated on the merits in state court, it did not err by denying relief on the claim.  *See Rocha v. Thaler*, 626 F.3d 815, 820 n.11 (5th Cir. 2010) (citing 28

No. 13-70005

U.S.C. § 2254(b)(2)) ("AEDPA allows a federal court to *deny* a habeas petition on its merits even if the claims it contains are unexhausted.").

As the district court observed, the circumstantial evidence that Russeau relies on establishes, at the most, a mere possibility that the hairs could have been planted by Detective Roberts. There is considerable evidence in the record to support the state court's finding that the police did not plant the hairs. Detective Roberts testified that he collected the bottle from the crime scene, placed it in a bag, sealed the bag, and turned it in to the property room at the Tyler Police Department. He said that he did not have access to the property room and that he had not opened the bag after sealing the bottle in it. After defense counsel insinuated, during cross-examination of the State's witnesses, that Detective Roberts had planted the hairs on the bottle, the prosecution called Detective Roberts to the stand again, where he expressly denied having tampered with any of the evidence. He testified that he had been in law enforcement for seventeen years and had worked on fifty to sixty murder cases and had never had such an allegation made against him in his career. In closing argument at the guilt-innocence phase of the trial, the prosecutor pointed out that there was no motive for Detective Roberts to risk his career and going to prison for tampering with evidence.

We agree with the district court that Russeau has not demonstrated that the state court unreasonably found that the police did not plant the hairs on the bottle. We therefore hold that the district court did not err by denying federal habeas relief on Russeau's prosecutorial misconduct claim.

### C.

We now turn our attention to the final issue certified by the district court and that is Russeau's claim that the trial court's refusal to appoint new counsel

for his second punishment trial violated his Sixth Amendment right to counsel[3] because Baade and Roberson, who represented him at the first trial, had a conflict of interest as a result of his ineffective assistance claim against them based on their performance at the first trial and their testimony at the state habeas evidentiary hearing.

Russeau did not present this claim in his second state habeas application. Instead, he attempted to raise it *pro se* at his second state habeas evidentiary hearing, notwithstanding the fact that he was represented by counsel (Haas), who was present at that hearing. Russeau argued that Baade and Roberson should not have been appointed to represent him at his second punishment hearing because he had accused them of ineffective assistance in his first state habeas application, and they had violated the attorney-client privilege by testifying at the initial state habeas evidentiary hearing.[4] The trial court agreed that Russeau's allegations of ineffective assistance resulted in a waiver of the attorney-client privilege with respect to those allegations, but explained to Russeau that his counsel did not give up any rights. Instead, they were ordered by the court to respond to the allegations of ineffective assistance in his state habeas application. Construing his allegation as an

---

[3] Russeau's federal habeas petition alleges a Fourteenth Amendment due process violation, and the COA granted by the district court also refers to such a violation. However, Russeau's brief filed in this court is based solely on the Sixth Amendment; he does not mention due process or the Fourteenth Amendment in connection with this conflict of interest claim.

[4] Much of the testimony of Baade and Roberson at the first state habeas evidentiary hearing dealt with Russeau's allegations of ineffective assistance at the guilt-innocence phase of the first trial. With respect to the punishment phase of the first trial, their testimony described Russeau's refusal to allow them to present the testimony of additional mitigation witnesses and the testimony of a police officer regarding Russeau's allegation that police officers provided him with crack cocaine while he was working as confidential informant, to establish a motive for the police to plant evidence to frame Russeau for Mr. Syvertson's murder. As we have noted, Baade and Roberson were prepared to present additional witnesses at the second punishment trial, but Russeau again refused to allow them to do so.

ineffective-assistance claim, the trial court denied relief on the merits under *Strickland*. On appeal, however, the TCCA held that the *pro se* claims raised by Russeau at the evidentiary hearing were not properly presented to the trial court in a writ application pursuant to the provisions of Article 11.071 of the Texas Code of Criminal Procedure.

The district court held that this claim was adjudicated on the merits by the state court. It concluded that, assuming *arguendo* that Russeau's pending allegation of ineffective assistance created a conflict with his trial counsel at the time of his second sentencing hearing, the issue was whether that assumed conflict adversely affected his counsel's performance. The district court held that Russeau had provided neither explanation nor evidence as to how the alleged conflict affected counsel's performance. In the absence of any showing of an adverse effect on counsel's performance, the district court held that the state court's rejection of this claim was neither contrary to, nor the result of an unreasonable application of clearly established federal law.

Russeau argues that the district court erred by applying AEDPA deference and instead should have reviewed his conflict of interest claim *de novo* because he raised it for the first time in federal court. He asserts that as a result of the "negligence" of his state habeas counsel, the claim was not included in his state habeas application. The State counters that although the district court reached the correct result in denying relief, the district court was mistaken in concluding that the conflict of interest claim was adjudicated on the merits, because the TCCA denied the claim for failure to comply with an adequate and independent state procedural rule. Thus, the State contends that Russeau is not entitled to *de novo* review of his conflict of interest claim because it is procedurally defaulted and Russeau has not demonstrated cause and prejudice to excuse the default.

No. 13-70005

The record is clear that Russeau objected to the appointment of the same attorneys before the trial court, which ruled against him on the merits, having already found in the first habeas proceeding that those same attorneys did not render ineffective assistance. However, the TCCA expressly refused to adopt the trial court's findings and conclusions as to this claim and held that it was not properly presented in Russeau's state habeas application as required by Article 11.071 of the Texas Code of Criminal Procedure. Thus it appears that the last state court to consider this claim expressly relied on a state procedural ground for the denial of relief. In his appellate brief filed in this Court, Russeau did not acknowledge that the TCCA held that this claim is procedurally defaulted, which perhaps explains why he did not contend that Article 11.071 is not an independent and adequate state procedural ground for the TCCA's decision and why he has not attempted to excuse the procedural default by showing cause and prejudice. In a Rule 28(j) letter filed on March 9, the day before oral argument, Russeau claimed for the first time that under *Martinez v. Ryan* and *Trevino v. Thaler*, the negligence of his state habeas counsel constitutes cause for his procedural default of this claim.

We need not decide whether the district court erred by applying AEDPA deference to this claim. Even if Russeau could prove cause and prejudice to excuse the procedural default, and even assuming that *Martinez* and *Trevino* apply to conflict of interest claims, Russeau's claim of actual conflict of interest is not "substantial," as required by *Martinez* and *Trevino*. This is true because he still has not shown that the alleged actual conflict adversely affected his counsel's performance at the second punishment hearing.

Under the *Cuyler v. Sullivan*, 446 U.S. 335, 348–50 (1980) standard, to prove a Sixth Amendment violation, a petitioner must show "that an actual conflict of interest adversely affected counsel's performance." *Perillo v. Johnson*, 205 F.3d 775, 781 (5th Cir. 2000). An "actual conflict" means counsel

24

was "compelled to compromise his or her duty of loyalty or zealous advocacy." *Id.* An "adverse effect" may be established by "evidence that some plausible alternative defense strategy or tactic could have been pursued, but was not because of the actual conflict." *Id.* (internal quotation marks and citation omitted). If the defendant establishes the existence of an actual conflict that adversely affected counsel's performance, he is not required to establish prejudice under *Strickland*. *Id.* at 781–82 ("Assuming the defendant establishes an actual conflict that adversely affected counsel's performance, prejudice is presumed without any further inquiry into the effect of the actual conflict on the outcome of the defendant's trial."). "In the absence of [*Sullivan*'s] actual conflict exception, a defendant claiming that his attorney had a conflict of interest must show a reasonable probability that the conflict prejudiced the defense." *Bostick v. Quarterman*, 580 F.3d 303, 306 n.2 (5th Cir. 2009) (alterations in original) (internal quotation marks and citations omitted).

Russeau acknowledges that his case does not involve multiple representation and that this court has limited the *Sullivan* standard to such cases, *see Beets v. Scott*, 65 F.3d 1258, 1270–71 (5th Cir. 1995) (en banc). Nevertheless, he contends that his case should be governed by *Sullivan* rather than *Strickland* because it presents the "unique posture" in which the former client is the complaining party in the subsequent proceeding. He thus contends that all he needed to show was an adverse effect on counsel's performance under *Sullivan*, and not a reasonable probability that the alleged conflict affected the outcome of his second sentencing hearing, as required by *Strickland*. We will assume, for purposes of this opinion, that the *Sullivan* standard applies. However, Russeau must still establish that the assumed conflict adversely affected his counsel's performance at the second punishment hearing.

Russeau maintains that under de novo review he has established a clear conflict of interest that adversely affected the outcome of his second trial, because trial counsel did virtually nothing to prepare for the second punishment trial, but instead stood on the same evidence that resulted in him getting the death penalty at the first trial. In support, he cites the transcript of an *ex parte* hearing conducted at the close of his second punishment trial. The transcript of that *ex parte* hearing is not included in the state court records that were provided to this Court. The volume cited by Russeau consists of a single page that says "Sealed Ex Parte Hearing." According to Russeau, he testified at that hearing that his counsel had not had a single face-to-face meeting with him following the order for a new punishment trial, and defense counsel conceded at that hearing that they had not personally visited Russeau at the jail in advance of his retrial, but had spoken with him on the telephone and in the courtroom because the facts of his case and the punishment evidence had not changed since the first trial. Russeau argues that counsel abdicated their obligations by failing to do any additional work on his case and by failing to consult adequately with him, face to face, about his decision to not present a mitigation defense.

The State argues that trial counsel did not breach the attorney-client privilege by testifying in response to Russeau's allegations of ineffective assistance, because his ineffective assistance claim operated as a limited waiver of the privilege. The State also contends that Russeau has not demonstrated a conflict between his interest and trial counsel's personal interest. The State contends that further investigation and discovery of additional mitigation evidence could not have had any effect on the outcome of the second sentencing hearing because Russeau prevented his lawyers from putting on a mitigation case. Citing the federal habeas petition, which apparently quoted the sealed *ex parte* transcript that is not in the record before

this Court, the State contends that Russeau told the trial court: "If you notice, I'm telling them to stop, because it doesn't matter to me. . . . I know they don't like it. They want to do more for what – I don't see it's worth it to me."

The record contradicts Russeau's assertion that Roberson and Baade did virtually nothing to prepare for the second punishment trial. Their motions for payment, submitted after the conclusion of the second punishment trial, reflect that they had conferences with the mitigation specialist and their mental health expert, and that they also consulted with Russeau's family members about testifying for Russeau. Although Russeau complains that counsel did not consult adequately with him about his decision not to present mitigating evidence, the record reflects that Russeau had ample opportunities to discuss that decision with counsel, including their meeting with him at the jail during the second sentencing hearing. Furthermore, the trial court addressed Russeau on the record and clarified that he had instructed his lawyers not to call mitigation witnesses and that he had made that decision freely, knowingly, and voluntarily. In sum, Russeau has not presented any "evidence that some plausible alternative defense strategy or tactic could have been pursued, but was not because of the [assumed] actual conflict." *See Perillo*, 205 F.3d at 781 (internal quotation marks and citation omitted). Thus, he has failed to establish that any conflict of interest resulting from trial counsel's representation at the second punishment hearing adversely affected counsel's performance. Accordingly, the district court did not err by denying federal habeas relief on Russeau's conflict of interest claim.

## IV.

Russeau has not demonstrated that the state court unreasonably applied *Strickland* when it denied relief on his claim that trial counsel rendered ineffective assistance by failing to argue that the police planted his hairs on the bottle retrieved from the crime scene. Although is not clear whether

No. 13-70005

Russeau exhausted his prosecutorial misconduct claim, we affirm the district court's denial of relief on that claim because the circumstantial evidence relied on by Russeau is inadequate to demonstrate that the state court unreasonably found that the police did not plant evidence.  Finally, Russeau's conflict of interest claim fails because, even assuming that he has established an actual conflict of interest under *Sullivan* and *Beets*, he cannot demonstrate that the alleged conflict had any effect on counsel's performance at the second sentencing hearing.  We therefore AFFIRM the district court's denial of federal habeas relief.

AFFIRMED.